IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **COURTHOUSE NEWS SERVICE,** 30 N. Raymond, Third Floor Pasadena, CA 91103 | : : : : | CASE NO. _____ (Judge _____) |
| Plaintiff, | : : | |
| v. | : : : | **COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF** |
| **NAILAH K. BYRD, in her official capacity as Clerk of the Cuyahoga County Court of Common Pleas,** Cuyahoga County Clerk of Courts 1200 Ontario St. Cleveland, OH 44113 | : : : : : : : | |
| Defendant. | : : | |

_____

Plaintiff Courthouse News Service ("Courthouse News"), by and through its undersigned attorneys, alleges the following in support of its Complaint for Injunctive and Declaratory Relief against Defendant Nailah K. Byrd ("Defendant"), in her official capacity as Clerk of the Cuyahoga County Court of Common Pleas ("CCCCP").

## INTRODUCTION

1. Since time beyond memory, state and federal courts across the country have provided access to new, non-confidential, civil complaints ("new complaints") when the court received the new complaint. Ohio's federal and state courts followed that tradition.

2. The tradition was described by Eighth Circuit Judge Bobby Shepherd in oral arguments in 2022 on a case involving issues identical to those here: "There was a time when – and some in this room may remember it – when you took a pleading to the

1

courthouse and the clerk stamped it physically and it went into different bins and it was available immediately."

3. In the transition from paper filing to electronic filing ("e-filing"), the federal courts and many state courts have kept the tradition of on-receipt access in place. Defendant has not. Defendant restricts access to new complaints until they have been completely processed. Defendant's no-access-before-process policy results in access delays of one day or longer for a substantial portion of new complaints, turning them into "old news."

4. The First Amendment to the United States Constitution provides the press and public with a qualified right of access to new complaints. Once this qualified right of access attaches, any restriction of access is a restriction of the press's and public's First Amendment rights, unless constitutional scrutiny is satisfied.

5. Whether new civil complaints are paper-filed or e-filed, this right of access attaches **on receipt**, which is when a new filing is delivered to, or deposited with, the clerk. In other words, the press and public have a constitutional right to access new complaints when the clerk receives them. Any restriction on access thereafter is an unconstitutional restriction of the press's and public's First Amendment right, unless Defendant shows the restriction satisfies constitutional scrutiny.

6. Courthouse News has a First Amendment right of access to new complaints that attaches when they are received by CCCCP. Such access is fundamental and essential to accurate and fair news reporting of civil court actions, and, thus, vital to the public's ability to monitor the activities of the judicial branch of government.

7. When a complaint is withheld—in effect sealed—the news it contains grows stale. The public is left unaware that a civil action has commenced and has invoked the

power of the judicial branch of government.

8. Defendant's "no-access-before-process" policy is reflected in Section XI(B) and II(E) of the First Amended Temporary Administrative Order (attached as Exhibit A; hereinafter "E-Filing Order"), adopted by Defendant on October 4, 2013. The order, which remains in effect, requires **all** e-filed documents to be withheld as "confidential" until Defendant has completed "Clerk Review." *See* **Exhibit A**, pp. 2, 7.

9. By its definition, Defendant's "Clerk Review" equates to processing. *Id*. Defendant is restricting access to newly e-filed complaints until Defendant and her staff review new case information entered into Defendant's e-filing system by the filer, process payment, accept the new complaint and then redact the complaint and exhibits. By withholding, in effect sealing, all new complaints until after processing is completed, Defendant is imposing a no-access-before-process policy. *Id*.

10. These delays are unnecessary, as demonstrated by the federal and state courts across the country that provide access to new complaints on receipt, before processing is completed. But for Defendant's no-access-before-process policy, there would be no delay. Defendant is capable of providing on-receipt access. She has chosen not to.

11. On March 31, 2023, Courthouse News sent a letter to Defendant requesting removal of the access restriction. But the restriction remains in place, resulting in continued and significant delays in access to new complaints filed in CCCCP.

12. Courthouse News brings this action to end the pervasive and ongoing deprivations of the First Amendment right of access, seeking both declaratory and injunctive relief.

**JURISDICTION AND VENUE**

13. Courthouse News' claims arise under the First and Fourteenth Amendments to

3

the U.S. Constitution and the Civil Rights Act, Title 42 U.S.C. §§ 1983, *et seq*. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 (federal question), 1343 (civil rights), and 2201 (declaratory relief). Defendant is subject to personal jurisdiction in this District.

14. Venue is appropriate in this district under 28 U.S.C. § 1391(b) and (c) because a substantial part of the events or omissions giving rise to Courthouse News' claims occurred in this district, specifically at CCCCP, and because Defendant is a public official who is employed in, performs her duties in, and resides in Cuyahoga County, Ohio.

## THE PARTIES

15. Courthouse News is a nationwide news service that was founded almost 30 years ago out of a belief that a great deal of civil litigation news went unreported by traditional news media. Courthouse News has over 2,200 subscribers nationwide and approximately 240 employees. Most of its employees are editors and reporters responsible for covering trial and appellate courts at the state and federal level in all 50 U.S. states.

16. Defendant Nailah K. Byrd, as the Clerk of Courts for CCCCP, is being sued in her official capacity as the Clerk. The Clerk is responsible for, among other things, the administration of court records at CCCCP.

17. Defendant is sued in her official capacity only. Courthouse News seeks relief against Defendant as well as her agents, assistants, successors, employees, and all persons acting in concert or cooperation with her or at her direction or under her control.

18. Defendant and the clerks acting under her direction and supervision are directly involved with and/or responsible for the delayed access to new complaints experienced by Courthouse News and other members of the press. Such acts reflect the official policy and practice of Defendant's office and CCCCP as a whole.

4

19. Defendant's actions, as alleged in this Complaint, are under the color of Ohio law and constitute state action for purposes of the Fourteenth Amendment to the U.S. Constitution and 42 U.S.C. § 1983.

## FACTUAL ALLEGATIONS

20. On March 31, 2023, Courthouse News sent a letter to Defendant requesting access when new complaints are received. In this letter, Courthouse News explained how e-filing systems can be configured to solve delays in access caused by Defendant's policy of processing complaints before providing access. The letter also compared the news to bread, "fresh on the day it's made, stale the next."

21. As of the filing of this Complaint, Defendant's counsel has spoken with plaintiff's counsel without result and the restriction remains in place.

*Courthouse News' Reporting Activities*

22. Courthouse News publishes a variety of news publications, including its "New Litigation Reports," which contain original, staff-written summaries of significant new civil complaints. In Ohio, Courthouse News publishes four *New Litigation Reports*: the *Cleveland State Report*, the *Cleveland Federal Report*, the *Central Ohio Report*, and the *Cincinnati Report*. The *Cleveland State Report* provides coverage of new litigation throughout roughly the northern third of Ohio, which includes Cuyahoga County.

23. *New Litigation Reports* do not cover criminal or family law matters, nor do they include residential foreclosures or probate filings. Moreover, CNS does not seek to review or report on the small number of newly filed civil complaints that are statutorily confidential or accompanied by a motion to seal.

24. Courthouse News also publishes the *Daily Brief*, which covers published

5

appellate rulings in state and federal courts, including the appellate courts in Ohio, the U.S. Supreme Court and federal circuit courts, as well as significant rulings from the federal district courts. Courthouse News also publishes a freely available website, www.courthousenews.com, featuring news reports and commentary, which is read by roughly 30,000 people every weekday. The website functions much like a print daily newspaper, featuring staff-written articles from across the nation that are posted throughout each day, and rotated on and off the page on a 24-hour news cycle.

25. Courthouse News has been credited as the original source of reporting on various topics by a wide range of publications, including: *ABA Journal*, *ABC News*, *The Atlantic*, *Austin American Statesman*, Black Christian News Network, *California Bar Journal*, CBS News, *The Dallas Morning News*, Fox News, *Houston Chronicle*, *Los Angeles Times*, National Public Radio; NBC News, *The New York Times*, Politico, *Rolling Stone*, *Salt Lake City Tribune*, *The Wall Street Journal*, *The Washington Post*, *USA Today*, *U.S. News and World Report*.

26. Courthouse News has more than 2,300 subscribers nationwide, including law firms, law schools, government offices and other news and publishing outlets such as: The Associated Press, *, The Atlanta Journal Constitution*, *The Boston Globe*, CNN, *The Dallas Morning News*, *Detroit Free Press*, *Honolulu Civil Beat*, *Las Vegas Review Journal*, *Los Angeles Times*, *Portland Business Journal*, *St. Paul Business Journal*, *The Salt Lake Tribune*, *The San Jose Mercury News*, *Tampa Bay Business Journal*, Variety, Walt Disney Company and Warner Bros.

27. Academic subscribers include Neumann University, Seton Hill University, Southern Illinois University School of Law, Stanford University, UCLA School of Law,

6

University of Chicago, University of Maryland, University of North Carolina at Chapel Hill, University of Pittsburgh, University of Virginia School of Law, and Wake Forest University.

28. In Ohio and other states, the *New Litigation Reports* cover civil complaints, focusing on those against business institutions and public entities. Courthouse News reporters do not cover family law matters, name changes, probate filings, most mortgage foreclosures, or collection actions against individuals, unless the individual is famous or notorious.

29. Courthouse News covers the larger Ohio state courts, like CCCCP, daily and emails reports to its subscribers nightly.

30. To prepare the *New Litigation Reports* and identify new cases that may warrant a website article, Courthouse News' reporters review new non-confidential civil complaints filed with the court. Courthouse News does not seek to review or report on the fraction of new civil complaints that are confidential or filed under seal.

31. Given the nature of news coverage and the Courthouse News publications, any delay in the ability of a reporter to obtain and review new complaints necessarily impedes the reporting on factual and legal controversies for subscribers and readers.

***The Evolution of Filing Procedures & a Tradition of Access to Civil Complaints***

32. In the paper era, both state and federal courts around the country gave the press access to new civil complaints when they were received.

33. Courthouse News began its coverage of new civil complaints, trials, and rulings in 1990. It initially focused on the U.S. District Court for the Central District of California, where Courthouse News reporters and other journalists could look through stacks of complaints handed to them by the intake clerk the day they were received.

7

34. As Courthouse News expanded to large courts throughout the United States, its reporters found a common tradition. In those courts, Courthouse News arrived to find existing procedures under which the clerks were providing the press corps with access to new civil complaints when they were received.

35. As Courthouse News continued to grow, its coverage extended to state and federal courts in every region of the United States, starting with major metropolitan areas, then gradually into less populous areas. Courthouse News now has reporters and editors covering state and federal trial and appellate courts across all 50 states. In every corner of the country Courthouse News turned, courts had existing procedures in place that provided the press with access to newly filed paper complaints when they were received across the counter.

36. When Courthouse News began covering Ohio courts in 2003, it experienced this nationwide tradition of timely access, including at CCCCP and the Northern and Southern Districts of Ohio. Until 2013, all new complaints filed in CCCCP were submitted on paper, across the intake counter at the courthouse. CCCCP's Clerk of Courts gave the press access to new paper-filed complaints when they were received.

37. The CCCCP Clerk of Courts allowed CNS's reporter to work at an unoccupied desk behind the counter, where he could read and report on newly filed complaints. The reporter retrieved complaints directly from the intake area, where newly filed complaints were dropped into a mail basket on the floor. CCCCP even required the CNS reporter to wear a shirt and tie like the clerk's office staff, in order to work behind the counter. If the docketing clerks were working quickly and took new complaints from the mail basket faster than the reporter could retrieve them, the reporter was able to borrow those

complaints from the individual docketing clerks and return them as soon as he finished his reporting. After the clerk's office closed to the public at 4:30 p.m., CCCCP allowed CNS's reporter to stay until 5:00 p.m. to finish reporting the day's new lawsuits. Permission to go behind the counter and stay for some period after the intake window closed were common methods for providing access to new complaints in federal and state courts.

38. As soon as the e-filing era began at CCCCP in 2013, access to e-filed complaints was withheld for processing and acceptance. In 2014, after several months of meetings and negotiations with then-Clerk Andrea Rocco, she instituted a policy that required docketing clerks make all new civil complaints filed before 4:30 p.m. available on the day they were filed, whether filed in paper or electronically. That policy continued under Clerk Nailah Byrd.

39. However, in June 2022, CCCCP began using redaction software that added an extra step to the intake process and the policy in place for the previous eight years was either ignored or eliminated without notice, causing excessive delays.

*Delays in Access to E-Filed Civil Complaints at CCCCP*

40. Today, nearly all federal district courts and many state courts provide access to newly e-filed complaints on receipt and before completion of processing.

41. Defendant is capable of providing on-receipt access to new complaints, yet she does not. Instead, Defendant has adopted and implemented an e-filing policy that restricts access until processing is complete.

42. Defendant's no-access-before-process policy requires that all new complaints (and all other e-filings) be withheld – effectively sealed -- until after Defendant's staff members have completed their clerical tasks involved with processing such complaints. As a direct result, Courthouse News, along with other members of the press and the public,

9

consistently experience access restrictions affecting roughly one third of the new civil complaints filed with CCCCP, translating into approximately 1,900 new civil actions withheld for one or more days between January 1, 2023 and April 30, 2023.

43. Defendant's no-access-before-process policy is reflected in Section II, Subsections (C) and (E) of the E-Filing Order, which governs all e-filing policies and procedures at CCCCP:

> **C. Clerk Review:** A review of electronically filed documents by the Clerk of Courts in accordance with court rules, policies, procedures, and practice. The Clerk shall review the data and documents electronically submitted to ensure compliance with court rules, policies, procedures and practices before officially receiving the documents for filing and creating a docket entry.
>
> **E. Confidentiality or Confidential:** All documents submitted for e-Filing shall be confidential until accepted by the Clerk.

44. Notably, Defendant's policy of making all complaints (and all other e-filings) "confidential" until after processing is directly at odds with other provisions in the E-Filing Order, and it ignores longstanding precedent.

45. Prior to restricting press and public access to court documents, a judge—not a clerk of courts—must "state findings or conclusions which justify nondisclosure to the public." *See Brown & Williamson Tobacco Corp. v. F.T.C.*, 710 F.2d 1165, 1176 (6th Cir. 1983).

46. Defendant is not permitted to make judicial decisions, rulings, or findings and is, therefore, not capable of making new complaints confidential, or sealing them. By marking new complaints as "confidential" and restricting access thereto, Defendant is thus sealing a document from public viewing without prior court order.

47. Contradicting that universal restriction, the E-Filing Order requires that

10

documents to be filed under seal "***must*** be filed conventionally, unless expressly required to be filed electronically by the Court[.]" Ex. A, p. 11, Section XIV (emphasis added). In other words, a filer who wishes to seal or make confidential certain documents must file them the old-fashioned way—via paper filing over the intake counter in Defendant's office at CCCCP. Thus, Defendant already has mechanisms in place to protect confidential filings from public viewing as they await a court order sealing the documents.

48. With Defendant's no-access-before-process policy restricting access to all e-filings it necessarily follows that newly e-filed, ***non-confidential***, civil complaints are withheld from press and public access without a motion by the filing party, without prior court order, and without sufficient justification to satisfy constitutional scrutiny.

49. Processing, or what Defendant calls "Clerk Review," takes time. And Defendant's no-access-before-process policy in effect seals new complaints inside the database where they are received while they wait for clerk processing. As a result, new court matters are restricted from press and public access until after their news value has diminished.

50. Because Defendant already has mechanisms in place to protect confidential filings from public viewing (*see* Ex. A, p. 11, Section XIV), Defendant's no-access-before-process policy unjustifiably restricts Courthouse News' First Amendment right of access to new complaints in such a way that it cannot survive constitutional scrutiny.

51. Moreover, Defendant is capable of providing on-receipt access to new complaints immediately after they are received by Defendant.

52. CCCCP's e-filing system is provided by Proware. This system shares basic characteristics common to all e-filing systems. Before the filer can electronically submit a

complaint to a clerk of court, the filer must enter basic case information, including case category and subcategory, and complete any other submission requirements the court specifies. Accordingly, the ProWare software, as with most e-filing software systems, does the job of enforcing submission requirements. Like all e-filing softwares, it can sort public case and subcase types from any non-public case types. There is, thus, no reason that new complaints need to be withheld from public view while they sit in a database waiting for a clerk to complete the post-filing "Clerk Review" and "acceptance" process.

***Qualified First Amendment Right of Access Attaches to New Civil Complaints***

53. A qualified First Amendment right of access claim involves a two-part test: (1) whether a right of access attaches, and (2) if the right attaches, whether suppression of that right serves an overriding interest and is narrowly tailored. *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 705 (6th Cir. 2002); *see Press-Enterprise Co. v. Superior Court*, 478 U.S. 1 (1986) (*"Press Enterprise II"*); *U.S. v. Miami Univ.*, 294 F.3d 797, 821 (6th Cir. 2002).

54. The Free Speech and Free Press Clauses of the First Amendment to the United States Constitution create a qualified right of public access where (1) the information sought has "historically been open to the public," and (2) "public access plays a significant positive role" in the functioning of the particular process in question. *See Press-Enterprise II*, 478 U.S. 1; *see also Miami Univ.*, 294 F.3d at 821.

55. A right of access "is implicit in the guarantees of the First Amendment[.]" *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S. Ct. 2814, 2829, 65 L. Ed. 2d 973 (1980). It is also "well established that the public and the press have a 'qualified First Amendment right to attend judicial proceedings and to access certain judicial documents.'"

12

*Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 120 (2d Cir. 2006) (citing *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91 (2d Cir.2004)); *see also Brown & Williamson*, 710 F.2d at 1177 (The resolution of private disputes frequently involves issues and remedies affecting third parties or the general public. The community catharsis, which can only occur if the public can watch and participate, is also necessary in civil cases. Civil cases frequently involve issues crucial to the public—for example, discrimination, voting rights, antitrust issues, government regulation, bankruptcy, etc.)

56. Historically, "courts have openly provided the press and general public with access to civil complaints." *Bernstein v. Bernstein Litowitz Berger & Grossman LLP*, 814 F.3d 132, 141 (2d Cir. 2016); *Courthouse News Serv. v. Planet*, 947 F.3d 581, 596 (9th Cir. 2020) ("*Planet III*").

57. New complaints are a traditional source of news providing the first piece of information about legal battles, therefore, serving as a "significant positive role" in our legal system. The right to review new civil complaints "is an indispensable predicate to free expression about the workings of government." *Courthouse News Serv. v. Planet*, 750 F.3d 776, 785, 787 (9th Cir. 2014) ("*Planet I*"); *accord Courthouse News Service v. Schaefer*, 2 F.4th 318, 326 (4th Cir. 2021) (citing *Press-Enterprise II*, 478 U.S. at 8-10); *Courthouse News Serv. v. Gabel*, No. 2:21- CV-000132, 2021 WL 5416650, at *9 (D. Vt. Nov. 19, 2021) (recognizing "the need for federal courts to have a measure of accountability and for the public to have confidence in the administration of justice") (appeal filed) (citations omitted) (internal quotation marks omitted); *Courthouse News Serv. v. New Mexico Admin. Off. of the Cts.*, No. CIV 21-0710 JB/LF, 2021 WL 4710644, at *31 (D.N.M. Oct. 8, 2021) (quoting *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 606, 102 S. Ct. 2613,

13

2619, 73 L. Ed. 2d 248 (1982)) (recognizing that public access "plays a particularly significant role in the functioning of the judicial process and the government as a whole.")

58. When the clerk receives a complaint, the public is entitled to know who has invoked the judicial branch's jurisdiction and authority and to what end. When the clerk withholds a new complaint, even temporarily, the public has no way of knowing that a new civil case was initiated. Even if the public learns of the case directly from the named parties or through docket information, without access to the complaint itself, there is no other more reliable and accurate means to ascertain the factual and legal claims in the new civil action. By inserting Defendant's staff members before the press's and public's direct access to the information in newly filed complaints, Defendant is creating room for error.[1]

***Defendant's No-Access-Before-Process Policy Cannot Survive Constitutional Scrutiny.***

59. Because the qualified First Amendment right of access attaches to new complaints on receipt, a presumption of openness arises at that time.

60. Any delays in access due to Defendant's no-access-before-process policy must serve an overriding interest based on findings that "closure is essential to preserve higher values and is narrowly tailored to serve those interests." *Ashcroft*, 303 F.3d at 709 (citing *Press-Enterprise II*, 478 U.S. at 13); *accord Shane Grp., Inc. v. Blue Cross Blue Shield of Michigan*, 825 F.3d 299, 305 (6th Cir. 2016) (citing as an example *Press-Enterprise Co. v. Sup. Ct.*, 464 U.S. 501 (1984) ("*Press-Enterprise I*")); *Planet III*, 947 F.3d at 596; *Bernstein*, 814 F.3d at 144; *Schaefer*, 440 F. Supp. 3d at 559-60.

61. Defendant cannot justify her practice under constitutional scrutiny because it

---

[1] The *Gabel* Court notes that "there would be no delay in an e-filing system" because the "efilers are filing with all of the document information they need, and it's hitting the docket, and there isn't any step in between there by staff." No. 2:21-CV-000132, 2021 WL 5416650, at *9.

does not advance an overriding interest and is not narrowly tailored to serve any such interest.

62. Defendant's no-access-before-process policy—which prohibits access to **all** electronically submitted documents until after Defendant's clerical review process is complete—is the sort of "blanket prohibition on the disclosure of records" that "implicates the First Amendment."  *Globe Newspaper Co. v. Pokaski*, 868 F.2d 497, 505 (1st Cir. 1989).  "A ban on reporting news just at the time the audience would be most receptive would be effectively equivalent to a deliberate statutory scheme of censorship."  *Planet III*, 947 F.3d at 594.

63. Defendant's no-access-before-process policy, which extends to all e-filed complaints, is overbroad and not narrowly tailored because it restricts access to *all* non-confidential documents by effectively sealing them until after clerk processing.

64. Compared to the paper era, providing timely access in an e-filing court is even easier.  An e-filed petition is simply a .pdf document that can be downloaded and viewed.  Nothing prevents a reporter from reviewing a new petition before it is processed by a clerk, nothing prevents a clerk from processing a petition at the very moment members of the press or public are reading it, and nothing prevents a clerk from processing a petition after review by the press or public, when the clerk's schedule permits.

65. Moreover, courts can automatically segregate confidential filings based on designations made by the filer in the e-filing interface.  Online filings often require an acknowledgement from the filer that he must comply with redaction rules.  *See e.g.* Sup. R. 45 (D)(3) (The responsibility for omitting personal identifiers from a case document submitted to a court or filed with a clerk of court pursuant to division (D)(1) of this rule shall

rest solely with the party. The court or clerk is ***not required*** to review the case document to confirm that the party has omitted personal identifiers, and ***shall not refuse to accept or file*** the document on that basis.) (emphasis added).

66. As was the case in the paper world, access in e-filing courts is delayed only if courts withhold new civil actions until after court staff complete administrative processing. Because most courts do not complete these clerical tasks for all of the day's new civil actions on the day of filing, the result of a no-access-before-process policy is to prevent the press from learning about a substantial percentage of new civil actions until at least the day after filing, at which point the information is old news and less likely to capture the public's attention.

67. Processing new petitions is not the problem. All e-filing courts must conduct some kind of administrative processing of new complaints. The problem arises when a court withholds new complaints from the press and public until after processing is complete.

68. Courts that provide access as e-filed complaints are received, regardless of whether court staff have completed clerical processing, include virtually every federal district court, including this Court, and state courts in Alabama, Arizona, California (all mandatory e-filing courts, covering 85% of the state's population), Connecticut, Florida, Georgia (courts in Atlanta metropolitan area), Hawaii, Nevada (in the state's biggest court in Las Vegas), Ohio (Franklin County Court of Common Pleas), New York, Texas (Austin), Utah, Vermont, and Washington (Tacoma). These courts provide this access in various ways, all of which are available to Defendant.

69. In the recent case of *Courthouse News Service v. O'Shaughnessy,* Case No. 22-02471, the United States District Court for the Southern District of Ohio issued an

injunction requiring the Franklin County Clerk to provide same day access to newly filed civil complaints. The Clerk has complied with the injunction by adopting a system where newly filed complaints are publicly available before processing is complete.

70. Courts, like those identified above, that do not withhold public access for processing allow new civil actions to be read and reported when they are received by the court, when the new action is still newsworthy and capable of commanding public attention, as reporters and the public did in CCCCP in the paper past.

71. These courts have e-filing systems that provide access to documents on their receipt. The e-filing systems have customizable features that either allow access to newly e-filed complaints that are sitting in the clerk's review queue or automatically assign a case number and place the new complaint into the docket. These state courts continue the longstanding practice of providing access new complaints when they are received by the intake clerk, before processing.

72. Despite Courthouse News' request for access upon receipt with an explanation of how other courts throughout the country provide on-receipt access before processing, Defendant continues to impose her no-access-before-process policy, thereby restricting Courthouse News' qualified First Amendment right of access to new complaints.

73. Injunctive relief will not require this Court's ongoing enforcement or any "major continuing intrusion… into the daily conduct of state proceedings," as has been demonstrated by the Vermont state court administrator in *Gabel*, the New York county clerk in *Tingling* and the Franklin County Court of Common Pleas clerk in *O'Shaughnessy* after injunctive orders required them to cease enforcing their no-access-before-process policies.

17

**COUNT ONE**

**Violations of Amendments 1 and 14 of the U.S. Constitution, and 42 U.S.C. § 1983.**

74. Courthouse News incorporates herein the allegations of Paragraphs 1-72 above.

75. Courthouse News has a qualified First Amendment right of access to new, non- confidential, civil complaints because such filings have historically been open to the press and public, and access to such complaints plays a significant role in ensuring that the public is aware that a civil dispute has arisen and the state power has been invoked.

76. The presumption of access to new complaints arises when they are received by the Defendant.

77. Defendant's no-access-before-process policy withholds new complaints until after processing is complete, thereby restricting access after the right of access has already attached. Thus, Defendant's policy restricts Courthouse News' access to new complaints in violation of its First Amendment right of access.

78. Defendant must show "that denial [of access] is necessitated by a compelling governmental interest, and is narrowly tailored to serve that interest." *Detroit Free Press*, 303 F.3d at 705 (quoting *Globe Newspaper*, 457 U.S. at 607, 102 S. Ct. at 2620, 73 L. Ed. 2d 248).

79. Defendant cannot satisfy this level of constitutional scrutiny. There exists no compelling reason to justify delaying on-receipt access to new complaints, as federal and state courts throughout the country do not impose such delays on access, and Defendant is capable of providing on-receipt access to newly e-filed complaints.

80. Courthouse News has no adequate and speedy remedy at law to prevent or redress Defendant's unconstitutional actions, and will continue to suffer irreparable harm as a

result of Defendant's violation of its First Amendment rights. Courthouse News is therefore entitled to a permanent injunction, and declaratory judgment, to prevent further deprivation of its constitutional rights and, consequently, the rights of its subscribers.

## **PRAYER FOR RELIEF**

*WHEREFORE, Courthouse News prays for judgment against Defendant as follows:*

    A.    A declaration that Courthouse News has a qualified First Amendment right of access to new, electronically submitted, non-confidential civil complaints;

    B.    A declaration that Sections II(C) and (E) of the E-Filing Order, as Defendant adopted on October 4, 2013, and has continued to enforce, are unconstitutional on their face under the First and Fourteenth Amendments to the United States Constitution;

    C.    A declaration that Defendant's policy and practice of withholding access to new, electronically submitted, non-confidential civil complaints until after processing—or "Clerk Review" and "acceptance," as referred to by Defendant—violates the First and Fourteenth Amendments to the United States Constitution;

    D.    A preliminary and permanent injunction restraining the enforcement of Sections II(C) and (E) of the E-Filing Order and Defendant's policy and practice of withholding access to new, electronically submitted, non-confidential civil complaints until after processing;

    E.    An award of costs and reasonable attorneys' fees pursuant to 42 U.S.C. § 1988; and

    F.    All other relief the Court deems just and proper.

Dated: June 26, 2023

Respectfully submitted,


/s/ Darren W. Ford
John C. Greiner (0005551)
Darren W. Ford (0086449)
FARUKI PLL
201 East Fifth Street, Suite 1420
Cincinnati, OH 45202
Telephone: (513) 632-0315
Fax: (513) 632-0319
Email: jgreiner@ficlaw.com
      dford@ficlaw.com

Attorneys for Plaintiff
Courthouse News Service

4887-0704-2668.1